SCRUGGS v. FOOT.

1. The Court of Probate has jurisdiction, on the petition of a creditor, as well as on the petition of the administrator, to order a sale of land in aid of assets.

2. An infant heir having conveyed to his mother his interest in the descended lands, and his deed being voidable at his election after attaining his majority, but not absolutely void, he was not a necessary party to a proceeding for the sale of such land in aid of assets.

3. An original proceeding by a widow for homestead in the lands of her deceased husband, cannot be initiated in the Court of Common Pleas. *Ex parte Lewie,* 17 *S. C.* 153, affirmed.

Before Pressley, J., Newberry, February, 1882.

Action by Jane Scruggs, and Richard M. Scruggs, by his guardian *ad litem*, against Michael Foot. The opinion states the case.

*Mr. F. Werber, Jr.*, for appellant.

*Messrs. W. H. Wallace, J. K. P. Goggans*, contra.

April 21st, 1883. The opinion of the court was delivered by

Mr. Chief Justice Simpson. Robert Scruggs, late of Newberry county, died in 1873, intestate, leaving as his heirs-at-law his widow, Jane Scruggs, and Elizabeth F. Fallow, Columbus C. Scruggs, Mary J. Summers, Sallie Scruggs and Richard Scruggs, his children, all of whom were of age, except Richard. In addition to a small personalty, he died seized and possessed of a small lot of land situate in the town of Helena, near Newberry C. H. William A. Fallow administered on his estate. The children, a short time after the death of their father, conveyed their interest in the aforesaid lot to their mother, so that she became the owner of the entire tract, including the interest of Richard, until his deed is avoided on account of infancy.

In 1878, one Nellie Jones, holding a debt against the estate, commenced action in the Probate Court in her own behalf, and in behalf of other creditors of Robert Scruggs, deceased, against Fallow, the administrator, and the heirs-at-law, alleging the insufficiency of personal assets, and praying that the land be sold in aid thereof to pay debts. The defendants were all served with summons, but it seems that no guardian *ad litem* was appointed for Richard, the minor. This fact is admitted as one of the facts of the case. No answer having been put in, and it appearing that the personal assets were insufficient, the Probate judge ordered the land to be sold, the proceeds to be applied to the payment of the claim of Nellie Jones, the sole creditor, to wit: $138.70, and to the costs, amounting to $110.05, the balance to await the further order of the court. At the sale the defendant became the purchaser. This sale was in Decem-

ber, 1878, and the defendant, appellant, has been in possession ever since.

The present action was commenced in January, 1881, by Jane Scruggs, and Richard, through his guardian *ad litem*, James K. P. Goggans, Esq., alleging the above facts and praying judgment that a homestead be assigned to plaintiffs; that the proceedings in the Probate Court be set aside, and the sale thereunder annulled; that the defendant be adjudged to account for rents and profits, and for costs and disbursements, &c. The case was referred to the master, Silas Johnstone, Esq., who reported the testimony. Upon the hearing of this report in February, 1882, Judge Pressley adjudged and decreed that the deed of conveyance to the defendant (appellant), under the Probate Court sale, be set aside, on the ground that said court was without jurisdiction, and further, that the plaintiffs have homestead, and that commissioners be appointed and directed to set apart such homestead to said plaintiffs. From this decree the defendant has appealed.

There are two questions presented in the appeal: First. Did the Probate Court have jurisdiction in the proceeding ordered by Judge Pressley to be vacated? Second. If not, can the decree below ordering homestead be sustained?

In *McNamee* v. *Waterbury*, 4 *S. C.* 156, this court sustained a judgment of the Probate Court ordering real estate to be sold to aid personalty in the payment of debts, obtained upon the application of the administrator of the intestate. This settles the abstract question as to the jurisdiction of the Probate Court to order the sale of realty to aid personalty in payment of debts, but it does not determine in terms whether this jurisdiction can be invoked by creditors as well as the administrator. In that case, as has been stated, the administrator of the debtor instituted the proceeding, and it was upheld. If the administrator in this case had been the actor, then the two cases would have been precisely parallel, and *McNamee* v. *Waterbury* being exactly in point both as to its facts and the legal principle involved, nothing more would be necessary except simply to cite that case.

In the present case, however, a creditor, not the administrator, instituted the proceeding. Can this make any difference as to

the jurisdiction of the Probate Court over the subject-matter? Does that jurisdiction depend upon the mode in which this subject is brought before the court, or does it depend upon the subject itself? In the opinion in *McNamee* v. *Waterbury,* the court based the jurisdiction upon that clause of the constitution which confers jurisdiction upon the Probate Court in "matters of administration," (article IV., section 20,) and it held under 2 *Stat.* 570, if the exigency of the estate required it, the lands of a decedent might be regarded as assets for the payment of his debts, in cases of insufficiency of personal property, to be enforced through sale by order of the Probate Court; the fact upon which the jurisdiction depends being the insufficiency of the personal assets and the necessity of using the realty in the administration arising from such insufficiency.

Now it is well understood that lands in the hands of the heir may be reached by creditors of the ancestor by action directly against the heir; or rather judgment may be obtained against the heir to the extent of lands descended or devised, and in this way the lands of a decedent may be substantially made liable for his debts without any direct action on the part of the administrator. If this can be done by a creditor in the Circuit Court without the co-operation of the administrator, where can be the objection in permitting him to do the same thing in the Probate Court, when it is admitted that the constitution has invested that court with jurisdiction necessary to meet just such an exigency, when it is invoked by the administrator upon facts established by him, to wit: the insufficiency of the personal estate, and the necessity for the application of the realty. Of course in such a proceeding both the heir and the administrator should be made parties, and the heir should have all the right of defense which he would have in an ordinary action against him to subject lands descended to the payment of the debts of an ancestor, including the right to require that the debt shall be established by such tribunal as its character may demand.

To hold that, under the section of the constitution referred to, the Probate Court only has jurisdiction in such cases when the administrator chooses to invoke it, would, it seems to us, be a very narrow construction. It would be placing a provision of the con-

stitution, intended for the benefit of creditors, quite beyond their reach, making them entirely dependent upon the administrator, (who, perhaps, might be hostile to their interests,) whether or not they could ever avail themselves of it. The other construction would be more liberal, would prevent circuity of action, and would more certainly meet the end and purpose of the constitution in conferring such jurisdiction upon the Probate Court "in matters of administration," and, when accompanied with the right of the heir to be made a party, privileged to make all the defenses which he could, if sued directly on account of lands descended or devised, would in no way be hurtful to him.

We think the principle of *McNamee* v. *Waterbury* goes to the extent of sustaining the judgment of the Probate Court herein as to the parties legally before that court. Now, who was before the court? It is admitted that all the heirs were legally summoned, but it is also admitted that Richard was a minor, and that no guardian *ad litem* was appointed for him. As to the adults, even if they were necessary parties, having been summoned and failing to appear and answer, they would be bound by the judgment; but, under our view of the case, they were not necessary parties. It appears that before the commencement of the proceeding by Nellie Jones, they had conveyed their interest in the land to their mother, and at that time they had no legal interest whatever in the litigation. This applies, too, to Richard. True, his deed to his mother was executed while he was a minor, but this fact did not render the deed absolutely void; it only made it voidable, and, until avoided, the title of his mother was good. So that neither the adults nor Richard were necessary parties to the proceeding · before the Probate Court. The objection, then, to the want of parties, cannot avail. Mrs. Scruggs, being the sole owner of the land, was the only party legally interested, and, she having been made a party, the court had complete jurisdiction.

Our conclusion, therefore, is, that the judgment of the Probate Court should have been conclusive on the plaintiff. It was certainly so as to her interest as an heir-at-law of her deceased husband, which was one-third. In regard to the interest derived from her children, had the question as to the liability of so much of the

land as had been *bona fide* aliened before suit brought been made before the Probate Court, upon proof of conveyance by the heirs-at-law to Mrs. Scruggs before action by Nellie Jones, doubtless a different judgment would have been rendered in that court as to the land thus conveyed by the heirs-at-law. But Mrs. Scruggs failed to answer, and the fact of such alienation, with its legal consequences, was not made or claimed before the Probate Court, and, no appeal having been taken from its judgment, it is *res adjudicata* as to all defenses made, or which could have been made thereto.

As to the homestead : This court held in *Ex parte Lewie*, 17 *S. C.* 153, that the Circuit Court had no original jurisdiction in the matter of homestead. At the time the petition was filed in that case the power to set off homestead to widows and children belonged, under the acts upon that subject, to the Probate Court, and Mrs. Lewie, having filed her petition in the Circuit Court, under the principle laid down in *Howze* v. *Howze*, 2 *S. C.* 232, to wit : "That where rights are created by statute, to be obtained and protected in a special manner, specified in the act and by a special tribunal, no other court can assume jurisdiction," this court, in effect, dismissed the petition.

Since the petition in *Ex parte Lewie* a subsequent act has been passed, substituting the masters, and in such counties where no masters have been appointed, the clerk of the court in the place of the Probate Court, in such matters. *Gen. Stat.* 1882, § 2002. But there is no provision in this act authorizing the initiation of an original proceeding for homestead in the Circuit Court.

The question of the right of the plaintiff to the homestead claimed, notwithstanding the sale of the land under the decree of the Probate Court, is not before us, and, therefore, no opinion is expressed in reference thereto. We desire to be understood as holding, simply, that the mode adopted here to have the homestead set off was not the legal mode, as prescribed by the statute, leaving the parties to pursue such course hereafter as they may be advised.

It is the judgment of this court that the judgment of the Circuit Court be reversed, and that the complaint be dismissed.